## INDEPENDENT CONTRACTOR OWNER/OPERATOR AGREEMENT

This Independent Contractor Owner/Operator Agreement (the "Contract") is made between Healthex Corp., whose principal place of business is 35 Powerhouse Road, Roslyn Heights, New York 11577

(hereinafter referred to as "Broker") and Tremaine Springer

whose principal place of business is located at 742 E 46th Street Brooklyn, NY 11203

(hereinafter referred to as "Owner/Operator") and is effective ___December___ ___8___, 20 11 .

WHEREAS Broker is a for-profit business which operates as a Broker of delivery services;

WHEREAS Owner/Operator is engaged in an independently established trade, occupation or business which is authorized and licensed to provide delivery and/or transportation services in the State of New Jersey;

WHEREAS Customers are third parties who use brokers or Broker to arrange transportation services and need to be connected with drivers for the pick-up and/or delivery of Customers' items;

WHEREAS Owner/Operator desires to enter into a contract whereby Owner/Operator will be available to perform services for Customers located by Broker as an Owner/Operator, and not that of an employee of either Broker or Customers; and,

WHEREAS Broker also desires to enter into this Contract wherein it may refer to Owner/Operator Customers in need of pick-ups and deliveries services:

NOW, THEREFORE, in consideration of the foregoing and of the mutual covenants set forth below, and for other good and valuable consideration, the parties agree as follows:

1.    Services Covered.

(a)    Owner/Operator agrees to pick up and deliver documents, packages, parcels, merchandise and other shipments subject to the terms and conditions set forth herein, as required by Customers.

(b)    IN PERFORMING FOR CUSTOMERS THE SERVICES DESCRIBED IN THIS CONTRACT, OWNER/OPERATOR UNDERSTANDS AND AGREES THAT IT SHALL BE AND REMAIN AT ALL TIMES AN OWNER/OPERATOR IN FACT AND LAW.    OWNER/OPERATOR IS NOT AN EMPLOYEE OF BROKER OR BROKER'S CUSTOMERS.

This specifically means that Owner/Operator shall be responsible for the manner and means of securing the end result of the provision of services under this Contract and shall use its own independent judgment and discretion for the most effective and safe manner in conducting pick-up and delivery services. Broker shall exercise no direct control over Owner/Operator, nor the method or means used by Owner/Operator in the performance of such services, including the selection of routes and the order of deliveries. It is the sole responsibility of Owner/Operator for completing each specific delivery accepted from Broker and for any failure of performance. Abandonment of route, failure to either pick-up or deliver per Customer's instructions and similar failures may result in immediate termination of this Contract.

2.    Manner of Performance of Service.

(a)    Owner/Operator agrees to provide and maintain a vehicle for the performance of delivery services under this Contract and represents and warrants that it will always have adequate transportation to complete all jobs it accepts.

Ex. 1

(b)     Owner/Operator is responsible for and shall pay all operation costs and expenses including, but not limited to, fuel, repairs, motor vehicle insurance, maps, hand truck, rope and all other equipment or supplies, in performing the services covered by this Contract. The parties agree that Broker is not responsible for Owner/Operator's maintenance or other operational expenses. Owner/Operator understands and agrees that Broker shall not reimburse Owner/Operator for any such operation costs or other expenses.

(c)     As required by law, regulation or certain Customer's requirements, Owner/Operator shall submit to any background check, drug test (random or otherwise), or other requirement at the reasonable request of the party so requiring it. Owner/Operator agrees to pay for any and all costs associated with such law, regulation or requirements.

(d)     Broker may from time to time notify Owner/Operator of available pick-ups or deliveries.   In the event Owner/Operator chooses to accept such available pick-ups or deliveries, Owner/Operator shall immediately notify Broker of such acceptance.    If Owner/Operator does not notify Broker of acceptance within 15 minutes of offer, Broker will offer the pick-ups or deliveries to other Owner/Operators.  Broker neither has, nor reserves, any right or power to exercise any direction, control, or determination over when Owner/Operator shall work.  Owner/Operator shall be free to set its own work schedule.

(e)     If accepted, Owner/Operator agrees to perform all pick-ups and deliveries in a timely, efficient and safe manner.  Owner/Operator will also be solely responsible for completion of the pick-up or delivery as provided for herein.  Owner/Operator shall follow all procedures as set forth by the Customer, law or regulation.  In addition, depending upon the nature of the product being picked-up or delivered, Owner/Operator further agrees that upon acceptance of said pick-up or delivery, Owner/Operator will deliver or pick up the product.

(f)     Owner/Operator agrees to provide its own communication device.

(g)     Because of the security and safety concerns of various Customers due to the heightened level of security in the United States, Owner/Operator agrees to prominently wear an identification badge in accordance with any Customer requirements for rendering services.

(h)     Owner/Operator agrees to faithfully and diligently devote its best efforts, skills and abilities to comply with the Customer's requirements.

(i)     Owner/Operator represents and warrants that Owner/Operator is not presently charged with a criminal offense and that Owner/Operator has not been convicted of a felony within the past ten years.

(j)     Owner/Operator understands that Owner/Operator may be involved in the transportation and delivery of sensitive material, and, as a result, Owner/Operator agrees that if Owner/Operator or Owner/Operator's designee converts any material, this Contract shall be considered immediately terminated.

(k)     Owner/Operator agrees that it will not transport or permit in its vehicle(s) passengers that have not met the criteria in this Contract applicable to the Owner/Operator while rendering services to Customers.

(l)     Owner/Operator will provide on a regular basis all the information to Broker for payment of Owner/Operator's business services hereunder.    This information will be provided by invoices generated by Owner/Operator's business.  Owner/Operator will be paid based on clear and complete invoices only.

(m)  Owner/Operator agrees to use delivery manifests required by Broker for invoicing purposes. If purchased through Broker, there will be a charge for the delivery manifests, which amount can be deducted from Owner/Operator's settlement.

(n)  Owner/Operator will comply with all Customer pick-up and delivery instructions communicated to it, including the obtaining of signatures and instructions not to leave unattended packages. If there is any question about Customer's instructions, Owner/Operator shall promptly contact Customer or Broker.

(o)  Owner/Operator agrees to provide all necessary documentation requested by Customer or Broker to support Customer invoicing. Owner/Operator understands that all such requested documentation must accurately reflect the date, time and description of items delivered or picked up. Owner/Operator will promptly call in all pick-ups and deliveries, if this is a Customer requirement, and Broker will record them.

3.  NO RIGHTS TO BENEFITS.  OWNER/OPERATOR FURTHER UNDERSTANDS AND AGREES, DUE TO ITS STATUS AS AN OWNER/OPERATOR ENGAGED IN ITS OWN INDEPENDENTLY CONTROLLED AND OPERATED BUSINESS, THAT OWNER/OPERATOR IS NOT ELIGIBLE FOR, NOR SHALL PARTICIPATE IN, ANY BROKER PENSION PLAN, HEALTH OR DISABILITY PLAN, OR OTHER INSURANCE OR FRINGE BENEFIT PLAN OF ANY KIND.

4.  Compensation.

(a)  Owner/Operator shall be compensated for each pick-up or delivery by receiving a percentage of the Customer billing actually collected by Broker. Broker will collect amounts due from Customers and pay Owner/Operator the proportional amount due based on billings actually collected in accordance with the settlement separately negotiated between Broker and Owner/Operator. These payments will be as negotiated. In the event of a service failure attributed to Owner/Operator's performance, Owner/Operator agrees to be subjected to a proportional loss of compensation as set forth in the separately negotiated agreement for settlement. Owner/Operator acknowledges that in order to be compensated for pick-ups and deliveries, all required documents, including but not limited to, manifests shall be promptly completed and turned into Broker's office as negotiated.

(b)  Broker agrees to provide timely invoices to its Customers for the services rendered by Owner/Operator. Provided, however, that Broker shall have sole and exclusive discretion and judgment regarding the form and content of its billings. Broker further agrees to use its best efforts in collecting billings from Customers and agrees to pay Owner/Operator its proportional share of the billing as agreed between the parties as soon as practicable after receipt of payment but in no event more than ten (10) days after receipt.

(c)  As an Owner/Operator, Owner/Operator is solely responsible for filing and paying all necessary federal, state and local taxes and returns, including, but not limited to, the timely payment of estimated income taxes and self-employment taxes. In particular, Owner/Operator will not be treated as an employee with respect to any services for federal, state or local tax purposes, and agrees, represents and warrants that it is an Owner/Operator engaged in an independently established trade, occupation or business and is responsible for all of its Owner/Operator and business taxes and agrees to pay them to the respective governmental entities and to hold harmless, defend and indemnify Broker there from. Owner/Operator is required to and will submit a completed IRS Form W-9 before commencement of its business services and an IRS Form 1099 at the end of each tax year.

(d)  If Owner/Operator collects Cash On Delivery (COD) either in moneys or check and fails to turn in moneys or check to Broker, Broker shall have the right to deduct from the Owner/Operator's

settlement a sum equal to Broker's proportional share of the COD payment. Said failure to promptly turn in any funds collected is also grounds for termination of this Contract.

(e)    If Owner/Operator disputes its settlement, or the billing to the customers, Owner/Operator must bring its documented records to the attention of Broker within seven (7) days so that the billing can be corrected to the Customer and Owner/Operator's settlement can be corrected, or else any discrepancy is waived.

(f)    Owner/Operator authorizes Broker to make deductions from Owner/Operator's compensation each settlement period where applicable:

1.    Rental expense for the rented communications equipment as described above;
2.    Expense for shirts obtained directly from Broker as described above;
3.    Any other expenses Broker is forced to incur on behalf of Owner/Operator.

5.    Insurance.

(a)    Vehicle Insurance. Owner/Operator shall maintain, at its sole expense, commercial auto insurance. Owner/Operator understands that allowing this policy to lapse shall be considered immediate default of this Contract and cause for termination of this Contract. Such policy shall, at a minimum, have the following coverage limits: $500,000 Combined Single Limit of Liability, with no more than a $5,000 deductible. Owner/Operator agrees to notify Broker immediately if notice of cancellation is received or non-renewal takes place. An up-to-date policy face page must be on file with Broker at all times. Broker is to be listed as an additional insured on the policy.

(b)    WORKERS' COMPENSATION INSURANCE. OWNER/OPERATOR SHALL NOT BE COVERED BY BROKER'S WORKERS' COMPENSATION INSURANCE BECAUSE OWNER/OPERATOR IS ENGAGED IN AN INDEPENDENTLY ESTABLISHED TRADE, OCCUPATION OR BUSINESS AND IS NOT AN EMPLOYEE OF BROKER. OWNER/OPERATOR ASSUMES THE RESPONSIBILITIES OF AN EMPLOYER FOR THE PERFORMANCE OF THE SERVICE PERFORMED PURSUANT TO THIS CONTRACT AND WILL PROVIDE WORKERS' COMPENSATION INSURANCE COVERAGE TO THE OWNER/OPERATOR'S EMPLOYEES, IF ANY.

(c)    Owner/Operator also agrees to obtain and maintain at all times either an Occupational Accident Insurance Policy or Workers' Compensation Insurance on Owner/Operator and all of its subcontractors, approved by Broker. Said policy of insurance shall also be on file with Broker or Broker's designee at all times. Owner/Operator will defend, indemnify and hold harmless Broker from any workers' compensation claim or any other claim arising out of an accident or injury while performing transportation services of either it or any of its drivers or others who may be employed by Owner/Operator.

(d)    Unemployment Insurance. Owner/Operator acknowledges it is not a Broker and represents and warrants that it will not become one while operating as an Owner/Operator under this Contract. Rather, Owner/Operator acknowledges that its provision of delivery services is performed outside the usual course of business of Broker, and Owner/Operator will remain so for the duration of this Contract.

OWNER/OPERATOR ACKNOWLEDGES IT IS NOT ENTITLED TO UNEMPLOYMENT INSURANCE, AND THAT TO THE EXTENT OWNER/OPERATOR WANTS TO BE COVERED FOR THE SAME, OWNER/OPERATOR WILL PROCURE ITS OWN INSURANCE OF THAT TYPE.

Owner/Operator will defend, indemnify and hold harmless Broker from any unemployment insurance claim of either it or any of its drivers or others that may be employed by Owner/Operator.

6. **Defense and Indemnity.** Owner/Operator agrees to defend, indemnify, and hold harmless Broker from any and all claims, demands, damages, suits, losses, liabilities and causes of action arising directly or indirectly from, as a result of or in connection with the actions of Owner/Operator and/or Owner/Operator's employees and subcontractors arising from the performance of its services under this Contract, including, but not limited to: abandonment of route, damage to property, missing property and personal injury or death to any person, including Owner/Operator and/or Owner/Operator's employees and subcontractors. Owner/Operator further agrees to defend, indemnify and hold harmless Broker from any loss, cost or expense in the event of any loss, damage or destruction of the items or personal property that Owner/Operator obtains in possession of or in the performance of this Contract. Broker shall have the right independently to take whatever action it may deem necessary, including hiring counsel of its choice, in its sole discretion, to protect or defend itself against any threatened action subject to defense and indemnification. Owner/Operator's obligations hereunder shall include advancing the cost of defense as well as the payment of any judgment rendered against Broker.

7. **Owner/Operator Business.**

(a)     It is expressly agreed that Owner/Operator is an Owner/Operator. Owner/Operator will not be considered an employee of Broker for any purpose whatsoever. Broker neither has nor reserves any right of power to exercise any direction, control or determination over the manner, means or methods of Owner/Operator's business activities and objectives in operating its business.

(b)     Owner/Operator agrees not to hold itself out as an employee or partner of Broker, nor as having authority to represent Broker, but only as an Owner/Operator for the purpose of performing services for Broker's Customers under this Contract. Owner/Operator has no power or authority to incur any debt, obligation or liability on behalf of Broker or Customer.

(c)     As Owner/Operator is engaged in an independently established trade, occupation or business, Broker neither has nor reserves the right to restrict Owner/Operator from being concurrently or subsequently engaged in providing other delivery services or engaging in any other occupation or business.

(d)     Owner/Operator shall at all times comply with any and all laws, ordinances, statutes, executive orders and regulations, federal, state, county and municipal, insofar as applicable to Owner/Operator's performance of services under this Contract.

(e)     Owner/Operator expressly represents and warrants that it has all city, county and/or state business licenses, permits and accounts required to operate an independently established trade, occupation or business.

(f)     Owner/Operator further expressly represents and warrants that it has all city, county and/or state motor vehicle carrier permit or other transportation licensing required to operate as a courier in the cities, counties and states where it operates.

8. **Pricing.** It is understood that Broker, as a Brokerage Company, has the sole and exclusive right to set or change the delivery and pick-up charges and prices from time-to-time.

9. **Confidentiality.** Except upon order of government authority having jurisdiction, Owner/Operator agrees that it shall not disclose to third parties any of Broker's proprietary information or trade secrets learned, nor use, either directly or indirectly, any of this information for proprietary gain. Owner/Operator understands that for 1099 reporting purposes and otherwise, Broker will have access to confidential information of Owner/Operator. Owner/Operator consents to the disclosure of this information to any governmental or subpoenaing party.

10.  Confidential/Sensitive Information.  During the course of the business relationship between Owner/Operator and Broker, Owner/Operator may learn confidential information or trade secrets of Broker or Customer.  Owner/Operator agrees not to use any of such information for any purpose, including but not limited to, soliciting Customers and agrees to keep all such information confidential.

11.  Term and Termination Provisions.  This Contract is for an initial term of 30 days.  At the end of the initial term, this Contract shall automatically renew on a month-to-month basis unless either party gives the other five (5) days' advanced written notice of intent to terminate.  This Contract may be unilaterally terminated without cause at any time by either party giving the other party at least five (5) calendar days' written notice of such termination.  Either party may terminate this Contract immediately with cause upon default or some other material breach.

12.  Right to Rescind Contract.  This Contract may be rescinded by either party, without penalty, within 72 hours after execution hereof.  Such notice of rescission shall be in writing and sent by Certified Mail, Return Receipt Requested.

13.  Governing Law.  This Contract and all rights and obligations of the parties shall be construed in accordance with the laws of where Broker is headquartered and any action shall be commenced in that jurisdiction in the closest state court.  Broker's rights shall inure to the benefit of its successors and assigns.

14.  Entire Agreement.  This Contract constitutes the entire agreement between the parties and supersedes all previous agreements between the parties.  Any additions or changes shall be in writing signed by an authorized representative of Broker and Owner/Operator.  Broker shall have the right to assign its rights and delegate its duties under this Contract.  Owner/Operator shall not have the right to assign its rights and to delegate its duties under this Contract, as its services are personal.

15.  Signature.  This Contract may be signed and is enforceable by electronic signature and facsimile.

IN WITNESS WHEREOF, the parties have executed this Contract effective on the date first indicated above.

Broker: HEALTHEX CORP.

Owner/Operator:

Signature: _____

Signature: _____

*Tremaine Springer*

5059433n14tnV187Rb9kD343o

Name:    Michael Montemarano

Name:    Tremaine Springer